**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WILLIAM VICTOR,** | : | |
| | : | |
| **Plaintiff** | : | **Civil No. 3:12-CV-282** |
| | : | |
| **v.** | : | **(Judge Nealon)** |
| | : | |
| **OFFICER HUBER, et al.,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

Now pending before the Court in the above-captioned action is Defendants' motion to dismiss Plaintiff's amended complaint, and Plaintiff's motion to supplement the amended complaint to include allegations of additional instances of retaliation he claims to have been subjected to after filing this lawsuit. Upon consideration, we will recommend that the motion to supplement the amended complaint be granted, but that the motion to dismiss be granted as well, and the case closed.

## I. BACKGROUND

### A. Victor's Claims as Pleaded in the Amended Complaint

The Plaintiff in this action, William Victor is an inmate in the custody of the Pennsylvania Department of Corrections, currently housed at the State Correctional Institution at Forest. In the past several years, Victor has litigated multiple cases in

the Middle District of Pennsylvania. These cases share a common theme, a global and all encompassing sense by Victor that everything which occurs to him in prison is in some sense retaliatory. Thus, most of these cases appear to have involved claims that his jailers, corrections officers, and prison supervisors have violated many of his constitutional rights, most typically by retaliating against Victor or subjecting him to unlawful treatment for filing grievances and lawsuits. Most recently, in May 2012, Victor tried a lawsuit over six days before a jury on claims that corrections officers and other staff at SCI-Huntingdon violated his rights under the Eighth Amendment when they broke his jaw in 2006 during the course of a cell extraction, and subsequently demonstrated deliberate indifference to his serious medical needs following this incident. The undersigned presided over this jury trial, which ultimately resulted in a jury verdict in favor of the defense on all claims. Victor's appeal to the Third Circuit Court of Appeals remains pending.

Victor commenced the instant litigation on February 13, 2012, alleging that prison personnel at the State Correctional Institution at Camp Hill violated his civil rights in connection with prison disciplinary proceedings in January 2012, and otherwise retaliated against Victor in a variety of ways due to Victor's prior lawsuits against other corrections officers, including the lawsuit summarized above arising out of an incident at SCI-Huntingdon. (Doc. 1.)

Following our initial Report and recommendation, the District Court entered an order on March 19, 2012, dismissing Victor's claims against a number of supervisory officials and striking specific dollar amounts alleged in the complaint. (Doc. 9.) On April 6, 2012, Victor then filed an amended complaint. (Doc. 16.) In the amended complaint, Victor asserts claims against nine corrections officers or other prison personnel, alleging due process violations relating to prison disciplinary proceedings held in January 2012 on charges that Victor had threatened corrections staff and was in possession of a weapon; violations of his First, Fourth, Eighth, and Fourteenth Amendment rights relating to a search of his personal property and legal materials, and the seizure of certain of these articles; and claims of conspiracy relating to the alleged planting of a homemade knife in Victor's property, resulting in Victor receiving additional misconducts. (Id.)

Victor labeled these claims as "Claim #1" through "Claim #4", and in summary, each claim alleges the following:

**Claim #1:** Victor alleges that Defendant Moslak, a hearing officer at SCI-Camp Hill, violated his civil rights to due process by preventing Victor from presenting witnesses during disciplinary hearings in January 2012, failed to provide Victor with sufficient notice and opportunity to prepare a defense to the disciplinary charges, and otherwise manifested

an intention to find Victor guilty of the charges before considering his defenses and was biased against him. Victor also claims that Defendant Little deprived him of process in connection with a disciplinary report issued on January 19, 2012, apparently charging Victor with prison infractions.

**Claim #2:** Victor claims that Defendants Chambers, Huber, Evans, Ayers, Gardner, and Richardson conspired on January 18, 2012, to violate Department of Corrections policies and codes of ethics, and to violate Plaintiff's First, Fourth, Eighth, and Fourteenth Amendment rights by allowing and encouraging Defendants Huber and Evans to unlawfully seize and destroy Victor's legal materials that he was using in civil and habeas litigation pending in the Middle District of Pennsylvania. In this claim, Victor generally alleges that these Defendants fabricated misconducts against him, interfered with his ability to litigate in court by seizing and destroying over 5,000 pages of legal documents, medical records, transcripts and other materials that Victor had compiled for use in his cases. In addition, Victor claims these Defendants used abusive language, and otherwise retaliated against him because he had sued a former SCI-Camp Hill corrections

officer in other litigation that was tried in this Court in May 2012.

**Claim #3**: In this claim, Victor alleges that Defendants Huber, Chambers, and Ayers conspired to retaliated against Victor on January 19, 2012, by planting a homemade knife in Victor's remaining personal property that these officers had confiscated from Victor during a search of his prison cell on January 18, 2012. Victor claims he faced further prison discipline after the allegedly planted knife was "discovered", and he claims that the ensuing discipline violated the First, Fourth, Eighth, and Fourteenth Amendments, constituted unlawful retaliation, and further interfered with Plaintiff's ability to litigate his civil and habeas proceedings. Victor also claims that his access to amenities such as showers, yard, and the prison law library was restricted as a result of the knife that he claims was planted in his property, and that "hostility . . . poured down on him even more from SMU staff" and his ability to graduate out of restricted housing and successfully return to general population was hindered as a result of this latest instance of alleged retaliation.

**Claim #4:** Finally, in this claim, Plaintiff claims that Defendants Reisinger and Rupinski conspired together on January 19, 2012, to deny

Victor due process and a fair hearing examiner, and otherwise violate Victor's rights to call witnesses, secure and present video evidence, and present a defense to the misconduct that was issued on January 18, 2012. In addition, Victor claims he was forced into pleading guilty to the misconduct, and that these Defendants failed to provide him with 24 hours in which to prepare a defense to the misconduct charges, and later falsified documents to give the appearance that Victor was given the full 24 hours required under Department of Corrections rules. Victor claims he was subsequently found guilty of the charged offenses involving threats and the possession of contraband, and received sanctions of five months of solitary housing.

In terms of relief, Victor seeks the award of compensatory and punitive damages, declaratory and injunctive relief, and permanent separation from each of the named Defendants. In addition, Victor seeks to have his institutional record cleared of the allegedly unlawful disciplinary decisions from January 2012, and an official investigation into the actions of Department of Corrections staff by a grand jury or an impartial state agency.

## B. Victor's Proposed Supplemental Complaint

On June 18, 2012, Victor filed a motion for leave to file a supplemental complaint pursuant to Rule 15(d) of the Federal Rules of Civil Procedure. (Doc. 27.) Review of the supplemental complaint reveals that it contains substantially similar allegations to those summarized as Claims #1 through Claim #4 above, and seeks to add an additional claim against Defendants Huber and Chambers, and unknown John and Jane Does, who Victor alleges conspired and retaliated against him for filing grievances and lawsuits. Although the allegations in the proposed supplemental complaint are largely generic, Victor avers he filed a grievance against Defendant Huber on May 14, 2012, alleging that Defendant Huber had retaliated against him by defacing Victor's boots, and by intercepting Victor's mail, including mailings from this Court. In response, Victor claims that Huber filed a retaliatory misconduct against him on May 17, 2012. Victor claims that Huber's actions were undertaken in further retaliation for Victor's litigation against a former SCI-Camp Hill corrections officer, and that the retaliation occurred near or during the time that Victor was going to trial on his claims in that case – a case that was actually tried before a jury in a proceeding over which the undersigned presided in May 2012. (Doc. 27-1, Supplemental Compl.)

## C. Defendants' Motion to Dismiss Plaintiff's Amended and Supplemental Complaint[1]

In the brief filed in support of their motion to dismiss Plaintiff's claims, (Doc. 39.), Defendants argue that Victor has failed to state claims upon which relief can be granted, and therefore this action should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants maintain that Victor's claims of conspiracy are impermissibly conclusory, and they assert that he has failed to allege facts sufficient to support claims for retaliation, due process violations, and the

---

[1] Defendants opposed Plaintiff's motion to supplement the complaint. (Doc. 36.) However, in their brief, Defendants do not argue substantively that the proposed supplemental complaint failed to state a claim; instead, they argued that Plaintiff included only one claim that was actually supplemental in that it relates to an incident that allegedly occurred after the filing of the amended complaint. (Id.) Following our review of the supplemental complaint, we are satisfied that Victor was simply trying to submit an inclusive pleading, one that included the original claims as well as a new supplemental claim denominated as Claim #5. Because Defendants offered no substantive basis for denying Plaintiff's motion for leave to supplement the complaint, we will recommend that the motion to supplement be granted. However, in Defendants' motion to dismiss, they have argued that all claims filed in the case, including Claim #1 through Claim #5, be dismissed for failure to state a claim. As explained in this report, we agree with Defendants that Victor has failed to state a claim for relief for alleged violations of his First, Fourth, Eighth, and Fourteenth Amendment rights for incidents and disciplinary proceedings he views as retaliatory, and we thus will recommend that all of Plaintiff's claims be dismissed.

related claims set forth in the supplemental complaint. Victor has responded to these motions, and this matter is now ripe for resolution.

For the reasons set forth below, it is recommended that Victor's claims be dismissed.

## II.    **STANDARD OF REVIEW**

### A.    **Rule 12(b)(6)– The Legal Standard**

The Defendants have filed a motion to dismiss this complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In addition, when reviewing *in forma pauperis* complaints, 28 U.S.C. § 1915(e)(2)(B)(ii) specifically enjoins us to "dismiss the complaint at any time if the court determines that . . . the action . . . fails to state a claim upon which relief may be granted."

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in

> Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly,

the Supreme Court has underscored that a trial court must assess whether a complaint

states facts upon which relief can be granted when ruling on a motion to dismiss.  In

Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when

considering a motion to dismiss, a court should "begin by identifying pleadings that,

because they are no more than conclusions, are not entitled to the assumption of

truth."  Id. at 679.  According to the Supreme Court, "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not

suffice."  Id. at 678.  Rather, in conducting a review of the adequacy of a complaint,

the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than
> conclusions are not entitled to the assumption of truth. While legal
> conclusions can provide the framework of a complaint, they must be
> supported by factual allegations.  When there are well-pleaded factual
> allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain

more than mere legal labels and conclusions.  Rather, a complaint must recite factual

allegations  sufficient to raise the plaintiff's claimed right to relief beyond the level

of mere speculation.  As the United States Court of Appeals for the Third Circuit has

stated:

[A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

(a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the

court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

Application of the foregoing legal guidelines to the supplemental amended complaint in this case causes us to find that Victor has failed to state a claim upon which relief can be granted, and we will recommend that the Court dismiss this action without granting further leave to amend.

## III.    DISCUSSION

### A.    Victor Fails to State a Claim Against Prison Disciplinary Hearing Officers for Due Process Violations

Victor's amended and supplemental complaints contain what we will liberally construe as due process violation claims against disciplinary hearing examiners at the prison, Defendants Reisinger and Moslak. With respect to these claims, the pertinent facts can be simply stated: Victor claims that in January 2012, Hearing Examiner Moslak violated his rights to a fair disciplinary hearing by refusing to allow Victor to present witnesses, and failed to give Victor the full 24 hours that Victor claims he

was entitled to receive under Department of Corrections policies to review the charges against him. Victor makes similar allegations against Defendant Reisinger, alleging that this Defendant conspired with others to violate Victor's due process rights with respect to the disciplinary proceedings held in January 2012. Among other matters, Victor claims he was cajoled into pleading guilty to the charged misconducts, and complains that Reisinger and others failed to give Victor 24 hours of notice regarding the charged offenses.

Thus, in this complaint, Victor essentially asks the Court to sit in review of Defendant Moslak's and Reisinger's conduct of disciplinary proceedings that were undertaken in response to misconducts issued charging Victor with making threats to corrections officers who had searched three boxes of Victor's personal property outside of Victor's presence, something that Victor believes, incorrectly, is unconstitutional. Notably, the corrections officers who conducted this search reported that they discovered a homemade knife secreted within Victor's property, and Victor was charged with being in possession of a weapon, a serious offense. While Victor's pleadings do not dispute as a factual matter the presence of a knife in his property, he nonetheless invites us to re-litigate this disciplinary matter based solely upon his claim that the knife which was found in his property was planted there by others. Victor complains that upon a finding that he was guilty of these violations,

he received five months of disciplinary custody and suffered the loss of other privileges or amenities, and he construes these penalties as further evidence that corrections officers and hearing officers conspired to retaliate against him.

As an initial matter, in analyzing any procedural due process claim, "the first step is to determine whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment." Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000) (citing Fuentes v. Shevin, 407 U.S. 67 (1972)). Once we determine that a property or liberty interest asserted is protected by the Due Process Clause, the question then becomes what process is due to protect it. Id. (citing Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). Protected liberty or property interests generally arise either from the Due Process Clause or from some specific state-created statutory entitlement. See Board of Regents v. Roth, 408 U.S. 564, 575 (1972). However, in the case of prison inmates,

> [i]n Sandin v. Conner, the Supreme Court announced a new standard for determining whether prison conditions deprive a prisoner of a liberty interest that is protected by procedural due process guarantees. Although the Court acknowledged that liberty interests could arise from means other than the Due Process Clause itself, the Court concluded that state-created liberty interests could arise only when a prison's action imposed an '*atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life*.' . . . In finding that the prisoner's thirty-day confinement in disciplinary custody did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest, the Court considered the following two factors:

1) the amount of time the prisoner was placed into disciplinary segregation; and 2) whether the conditions of his confinement in disciplinary segregation were significantly more restrictive than those imposed upon other inmates in solitary confinement.

Shoats, 213 F.3d at 143-44(citations omitted, emphasis added).

Applying these legal benchmarks, it has been held that disciplinary proceedings which result in sanctions of disciplinary segregation for six months or more do not impose atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life in similar situations, and, therefore, do not give rise to due process claims. Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002)(7 months disciplinary confinement). See, e.g., Dunbar v. Barone, 12-1337, 2012 WL 2775024 (3d Cir. July 10, 2012)(held, inmate placed in disciplinary custody for 540 days (about eighteen months) as a result of his misconduct. He did not present any evidence that the conditions he faced in disciplinary custody amounted to an "atypical and significant hardship" under Sandin, and we have held that this type of confinement does not constitute an "atypical and significant hardship." citing Griffin v. Vaughn, 112 F.3d 703, 705–07 (3d Cir.1997) (ruling that fifteen months in segregation was not an atypical and significant hardship)); Arango v. Winstead, 352 F. App'x 664, 666 (3d Cir. 2009)(held, placement in administrative segregation for days or months at a time or transfers to more restrictive custody do not implicate a

protected liberty interest, citing Torres, 292 F.3d at 150; Fraise v. Terhune, 283 F.3d 506, 522-23 (3d Cir.2002)); Henderson v. Kerns-Barr, 313 F. App'x 451, 452 (3d Cir. 2008)(90-day disciplinary confinement did not implicate a liberty interest). Therefore, as a threshold matter, to the extent that he advances a due process argument, Victor has not articulated a sufficient liberty interest to trigger a valid due process claim in this prison setting, and his due process claims against Defendants Moslak and Reisinger fail.

**B.** **Victor's Other Prison Discipline Retaliation Claims Are Similarly Unavailing Based Upon the Facts Alleged**

Victor makes a second related, retaliation claim against a number of correctional officers, including Defendants Chambers, Huber, Evans, Ayers, Gardner, and Richardson, alleging that these individuals – apparently conspiring together – submitted false misconduct reports against him and otherwise took numerous adverse actions against him in retaliation for his past grievances and support of other inmate grievances.

In bringing constitutional claims against correctional officers arising out of these prison disciplinary hearings, Victor faces an exacting burden of proof. It is well established that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does

not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). The Supreme Court has, however, recognized a set of minimum procedural protections that must apply to prison disciplinary proceedings, including the right to: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety or correctional goals, to call witnesses and present documentary evidence as part of a defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. Id. at 563-67.

A prison disciplinary determination comports with due process if it is based on "some evidence." See Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454-56 (1985) ("[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board"). This standard is minimal and does not require examination of the entire record, an independent assessment of the credibility of witnesses, or even a weighing of the evidence. See id. at 455; Thompson v. Owens, 889 F.2d 500, 501-02 (3d Cir. 1989). Therefore, it is well settled that disciplinary decisions are entitled to considerable deference by a reviewing court and must be upheld whenever there is "some evidence" to support the decision. Hill, 472 U.S. at 457; Elkin v. Fauver, 969 F.2d 48 (3d Cir.1992); Thompson v. Owens, 889 F.2d 500 (3d Cir. 1989); Franco v. Kelly, 854 F.2d 584, 588 (2d Cir. 1988); Freeman v. Rideout, 808 F.2d 949, 955 (2d Cir. 1986). Thus, in

this setting the "function [of the court] is to determine whether there is some evidence which supports the decision of the [hearing officer]." <u>Freeman</u>, 808 F.2d at 954. As the Supreme Court has observed, the "some evidence" standard is a highly deferential standard of review and:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

<u>Hill</u>, 472 U.S. at 455-456.

Provided that a prisoner is afforded these due process protections during the disciplinary hearing process, it is well-settled that a claim that a misconduct report was false, standing alone, does not state a valid § 1983 cause of action. As the United States Court of Appeals for the Third Circuit has aptly observed: "[F]iling false disciplinary charges does not itself violate a prisoner's constitutional rights, so long as procedural due process protections were provided. <u>See, e.g.</u>, <u>Freeman v. Rideout</u>, 808 F.2d 949, 952-53 (2d Cir.1986) (the filing of false charges does not constitute a claim under § 1983 so long as the inmate was granted a hearing and an opportunity to rebut the charges); <u>Hanrahan v. Lane</u>, 747 F.2d 1137, 1140 (7th Cir.1984)." <u>Richardson v. Sherrer</u>, 344 F. App'x 755, 757-758 (3d Cir. 2007). <u>See also</u> <u>Booth v.</u>

Pence, 141 F. App'x 66 (3d Cir. 2005); Smith v. Mensinger, 293 F.3d 641, 653-54 (3d Cir. 2002).

These principles also directly apply to inmate retaliation claims stemming from prison disciplinary proceedings. A prisoner claiming that prison officials have retaliated against him for exercising his constitutional rights by filing a false misconduct report must prove the following three elements: (1) the conduct in which he engaged was constitutionally protected; (2) he suffered adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct. Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002). With respect to the obligation to demonstrate that he suffered an adverse action, a plaintiff must demonstrate that he suffered action that "was sufficient to deter a person of ordinary firmness from exercising his rights." Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000). While filing false misconduct reports may constitute the type of action that will, in certain cases, support a retaliation claim, Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003), in a prison discipline context, an inmate's retaliation claim will fail whenever the defendant shows that there is "some evidence" to support the discipline citation. As the United States Court of Appeals for the Third Circuit has observed: "[an inmate's] retaliatory discipline claim fails [when] there is 'some evidence' supporting the guilty findings . . . . See Henderson

v. Baird, 29 F.3d 464, 469 (8th Cir.1994) (stating that a finding of 'some evidence' to support a prison disciplinary determination 'checkmates' the prisoner's retaliation claim)." Nifas v. Beard, 374 F. App'x 241, 244 (3d Cir. 2010).

While we recognize that these claims are judged against exacting legal standards, and in some instances resolution of prison disciplinary claims entails an examination of matters outside the pleadings relating to the disciplinary hearings themselves. See, e.g., Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003); Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001). In other instances, however, the presence of "some evidence" supporting the prison infraction is apparent on the pleadings. In such cases, summary dismissal of a retaliation claim is appropriate. See e.g., Romansky v. Stickman, 147 F. App'x 310, 312 (3d Cir. 2005)(affirming dismissal of inmate complaint and holding that in light of the fact that he was found guilty of misconduct, inmate did not state a retaliation claim); Brown v. Hannah, 850 F. Supp. 2d 471, 478 (M.D. Pa. 2012)(dismissing inmate disciplinary retaliation claim). Thus, although these cases can entail consideration of matters outside the pleadings, in this case we do not believe that resolution of Victor's claims relating to his disciplinary proceedings and alleged retaliation requires that the parties engage in discovery and summary judgment motions practice, since Victor's pleadings identify and seem to acknowledge the very serious evidence that was used to support the disciplinary

21

findings in this case.  Although Victor insists that corrections officers planted a homemade knife or "shank" in his personal property, and then produced this contraband in support of the misconducts that were issued to Victor, we cannot ignore the fact that this knife – which Victor seems to acknowledge exists – constitutes more than "some evidence" of prison violations.  Where, as here, the inmate-plaintiff's own pleadings disclose the existence of some evidence to support a disciplinary citation, that evidence checkmates a retaliation claim and compels dismissal of this claim.

Victor, however,  would apparently invite us to examine critically every one of his disciplinary proceedings, and to engage in discovery in this litigation, on the grounds that he is repeatedly being charged with misconducts that he did not commit, and that hearing officers discharge his hearings without paying full fidelity to Department of Corrections policies regarding notice and other procedures.  Although we can appreciate that Victor takes great issue with the findings reached during these proceedings, and that he now construes virtually any dispute with prison officials as providing further evidence of harassment by prison officials owing to the many grievances and lawsuits he has filed against their colleagues, we should not indulge in Victor's invitation that we superintend prison disciplinary proceedings in cases where there admittedly was "some evidence" to support the hearing officers' findings of misconduct warranting discipline.  In this case, we conclude that "some evidence"

plainly exists by Victor's own admission of the basis for the disciplinary findings in his case, and we, therefore, recommend that the Court resist Victor's invitation to have the Court interject itself into a disciplinary matter that resulted in discipline that was plainly supported by evidence, albeit evidence that Victor disputes.

### C.   Victor's Access-to-Courts and Property Confiscation Claims Fail

In his amended and supplemental complaints Victor also protests the manner in which cell searches were conducted in his cell, or of his property, in January of 2012. Liberally construed, Victor makes three core claims in this regard, alleging that this activity was an unlawful search, deprived him of property without due process, and unconstitutionally interfered with his right of access to the courts.

These claims are unavailing. At the outset, to the extent that the Plaintiff is attempting to advance a Fourth Amendment claim in this prison setting arising out of these searches, it is clear that this claim fails as a matter of law. While the Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV, in order to give force to this guarantee, government officials are limited to conducting searches that are reasonable. Delaware v. Prouse, 440 U.S. 648, 653-54 (1979); Florence v. Bd. of Chosen Freeholders of Burlington, 621 F.3d 296, 301 (3d Cir. 2010). As the Third Circuit has explained:

Reasonableness under the Fourth Amendment is a flexible standard, <u>Bodine v. Warwick</u>, 72 F.3d 393, 398 (3d Cir. 1995), "not capable of precise definition or mechanical application, <u>Bell [v. Wolfish</u>, 441 U.S. 520, 559 (1979)]. "In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." <u>Id.</u>

<u>Florence</u>, 621 F.3d at 301.

In <u>Hudson v. Palmer</u>, 468 U.S. 517, 529 (1984), and <u>Block v. Rutherford</u>, 468 U.S. 576 (1984) the Supreme Court directly addressed this issue in a custodial setting and unequivocally foreclosed Plaintiff's claims relating to the searches of his cell and personal property stored therein. In <u>Block</u> and <u>Hudson</u> the Supreme Court flatly held that the search of a cell by prison officials does not violate the Fourth Amendment. As the United States Court of Appeals for the Third Circuit has explained:

The defendants correctly assert that prisoners do not have a Fourth Amendment right to privacy in their cells. <u>Hudson v. Palmer</u>, 468 U.S. 517, 529, 82 L. Ed. 2d 393, 104 S. Ct. 3194 (1984). The Supreme Court has concluded that the Fourth Amendment right to privacy, to be free from unreasonable searches, is fundamentally inconsistent with incarceration. <u>Id.</u> at 527. Mindful that internal security is a chief concern in prisons, the Court recognized that it would be impossible to prevent the introduction of weapons, drugs and other contraband into the premises if prisoners maintained a right of privacy in their cells. <u>Id.</u> Therefore, "the Fourth Amendment has no applicability to a prison cell."

<u>Doe v. Delie</u>, 257 F.3d 309, 316 (3d Cir. 2001). Thus, it is beyond argument that the Plaintiff did not enjoy a privacy right in his prison cell. For these reasons, Victor's

Fourth Amendment constitutional claims regarding the search of this cell lack any legal merit.

Moreover, inmate due process claims arising out of the confiscation of property are judged against settled legal standards, standards which recognize that:

> Like other constitutional rights, the Due Process rights of prisoners may be accommodated to a prison's legitimate security needs. See Bell v. Wolfish, 441 U.S. 520, 558-60, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). [Therefore] "[A]n unauthorized intentional deprivation of property" by prison officials does not violate the Due Process Clause "if a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)(citing Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)). Pre-deprivation notice is not constitutionally required. See id.

Monroe v. Beard, 536 F.3d 198, 210 (3d Cir. 2008).

Thus, there are two crucial component to any inmate due process claim in this setting: (1) the confiscation of property; *and* (2) an allegation that property was taken and the prisoner was afforded no post-deprivation administrative remedy. In this case Victor cannot contend that he had no post-deprivation remedy since Department of Corrections rules provide for just such a remedy, and Victor acknowledges the existence of this remedy, while complaining about how prison officials exercise their discretion in passing on such property loss claims. Victor is not entitled, however, to compel the federal courts to engage in proceedings to determine the value of lost property when an adequate administrative post-deprivation remedy exists within the

prison system. Therefore, these claims relating to the search and seizure of Victor's property fail on their merits.

Victor's prospects on this particular aspect of the amended complaint do not improve if it is cast as an access to courts claim since Victor cannot show that he was denied access to the courts in a fashion which offends the Constitution. Victor's complaint calls upon us to consider the contours of the constitutional right of access to the courts. Since 1977, the United States Supreme Court has recognized that inmates have a constitutional right of access to the courts. Bounds v. Smith, 430 U.S. 817 (1977). As the Supreme Court initially observed, this right of access to the courts is satisfied when corrections officials facilitate "meaningful" access for those incarcerated, either through legal materials or the assistance of those trained in the law. Id. at 827 ("[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.")

Two decades later, in 1996, the Supreme Court provided further definition and guidance regarding the scope and nature of this right of access to the courts in Lewis v. Carey, 518 U.S. 343 (1996). In Lewis, the Court eschewed efforts to define this

right in abstract, or theoretical terms, but rather cautioned courts to focus on concrete outcomes when assessing such claims. As the Court observed:

> Because <u>Bounds</u> did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's . . . legal assistance program is subpar in some theoretical sense. . . . Insofar as the right vindicated by <u>Bounds</u> is concerned, "meaningful access to the courts is the touchstone," <u>id</u>., at 823, 97 S.Ct., at 1495 (internal quotation marks omitted), and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the . . . legal assistance program hindered his efforts to pursue a legal claim. . . . . Although Bounds itself made no mention of an actual-injury requirement, it can hardly be thought to have eliminated that constitutional prerequisite. And actual injury is apparent on the face of almost all the opinions in the 35-year line of access-to-courts cases on which <u>Bounds</u> relied, <u>see id</u>., at 821-825, 97 S.Ct., at 1494-1497. Moreover, the assumption of an actual-injury requirement seems to us implicit in the opinion's statement that "we encourage local experimentation" in various methods of assuring access to the courts. <u>Id</u>., at 832, 97 S.Ct., at 1500.

<u>Lewis v. Casey</u>, 518 U.S. 343, 351-52 (1996).

Thus, following <u>Lewis</u>, courts have consistently recognized two guiding principles which animate access-to-court claims by prisoners. First, such claims require some proof of an actual, concrete injury, in the form of direct prejudice to the plaintiff in the pursuit of some legal claim. <u>See, e.g.</u>, <u>Oliver v. Fauver</u>, 118 F.3d 175 (3d Cir. 1997); <u>Demeter v. Buskirk</u>, No. 03-1005, 2003 WL 22139780 (E.D. Pa. Aug. 27, 2003); <u>Castro v. Chesney</u>, No. 97-4983, 1998 WL 150961 (E.D. Pa. March 31, 1998). A necessary corollary to this principle is that, in order to prevail on an access

to the courts claim, a "plaintiff must identify a 'nonfrivolous,' 'arguable' underlying claim." <u>Christopher v. Harbury</u>, 536 U.S. 403, 415 (2002). Thus:

> Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an "actual injury"-that they lost a chance to pursue a "nonfrivolous" or "arguable" underlying claim; and (2) that they have no other "remedy that may be awarded as recompense" for the lost claim other than in the present denial of access suit. <u>See</u> <u>Christopher v. Harbury</u>, 536 U.S. 403, 415, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002). To that end, prisoners must satisfy certain pleading requirements: The complaint must describe the underlying arguable claim well enough to show that it is "more than mere hope," and it must describe the "lost remedy." <u>See id.</u> at 416-17, 122 S.Ct. 2179.

<u>Monroe v. Beard</u>, 536 F.3d 198, 205-06 (3d Cir. 2008)

These legal tenets control here, and are fatal to Victor's access to the courts claim for at least two reasons. First, to make such a claim Victor "must describe the underlying arguable [legal] claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" <u>Monroe v. Beard</u>, 536 F.3d 198, 206 (3d Cir. 2008). Here, although he alludes to litigation that he was prosecuting in this Court, and which was in fact tried before this Court in a week-long jury trial held in May 2012, Victor's complaint identifies no lost legal claims or remedies, essential prerequisites to a constitutional tort in this setting. Further, and even more fundamentally in this case, Victor simply has not shown actual concrete prejudice to him in the litigation of a particular case, the essential prerequisite to a constitutional

claim in this setting. Quite the contrary, the record affirmatively reveals that Victor has been an active, indeed a prolific litigator, who has filed numerous pleadings without any apparent delay or outside impediment.

Furthermore, aside from Victor's repeated access to the federal courts as evidenced in multiple actions he has filed, including the instant case, in May 2012 the undersigned presided over a jury trial in which Victor ably presented his claims and evidence before a jury that ultimately found in favor of the corrections officers and other prison staff Victor had sued. Victor has alleged that many corrections officers have conspired with one another to retaliate against him for having brought that action against a former SCI-Camp Hill corrections officer, and specifically tried to interfere with Victor's ability to try his case effectively by defacing his boots or interfering with his access to his prison mail or legal property. However, Victor has not plausibly alleged facts that would show that the alleged defacement of his boots, interference with his prison mail, or alleged withholding of his legal property, had a demonstrable effect on his ability to litigate his claims, particularly since Victor was plainly capable of litigating effectively during the course of a week-long jury trial before this Court in May 2012. Indeed, the docket in that case reveals that both the Court and the Department of Corrections went to great lengths during that trial to ensure both that Victor was provided sufficient time and opportunity to present his

claims and evidence, and that he was furnished with legal documents that he claimed were improperly taken from him. In every instance where Victor sought materials, or assistance, and made a showing of need, his requests were granted. Since it appears that Victor has enjoyed full access to the courts with respect to the very litigation he claims he was prejudiced from prosecuting, notwithstanding his numerous disciplinary citations and resulting sanctions in prison, he cannot demonstrate success on this particular constitutional claim, and he has not alleged sufficient facts that would suggest otherwise.

### D. <u>Victor's Conspiracy Allegations are Insufficient to State a Claim</u>

Finally, we observe that the common thread running throughout Victor's allegations in this case is a claim that numerous corrections officers and other prison personnel conspired among themselves to deny him due process, to plant contraband in his legal property, and otherwise to retaliate against him in response to litigation he was prosecuting against a former SCI-Camp Hill corrections officer. However, other than his own conclusory allegations that these defendants conspired and collaborated with one another to violate Victor's constitutional rights, Victor's complaint is devoid of the kind of plausible and sufficient allegations necessary to support claims for conspiracy.

As Defendants aptly note, in order to plead a civil rights action based upon a

claim of conspiracy, a plaintiff must plead allegations that are:

> supported by facts bearing out the existence of the
> conspiracy and indicating its broad objectives and the role
> each defendant allegedly played in carrying out those
> objectives. Bare conclusory allegations of "conspiracy" or
> "concerted action" will not suffice to allege a conspiracy.
> The plaintiff must expressly allege an agreement or make
> averments of communication, consultation, cooperation, or
> command from which such an agreement can be inferred.

Flanagan v. Shively, 783 F. Supp. 922, 928 (M.D. Pa. 1992). Furthermore, when

pleading a conspiracy claim, a plaintiff cannot rely upon subjective suspicion and

speculation. Young v. Kann, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991). Quite the

contrary, " to properly plead an unconstitutional conspiracy, a plaintiff must assert

facts from which a conspiratorial agreement can be inferred. D.R. v. Middle Bucks

Area Vocational Tech. Sch., 972 F.2d 1364, 1377 (3d Cir.1992); see also Startzell v.

City of Philadelphia, 533 F.3d 183, 205 (3d Cir.2008) (stating that a conspiracy

requires a 'meeting of the minds') (further citation omitted). This holding remains

good law following Twombly and Iqbal, which, in the conspiracy context, require

'enough factual matter (taken as true) to suggest that an agreement was made,' in

other words, 'plausible grounds to infer an agreement.' Twombly, 550 U.S. at 556,

127 S.Ct. 1955." Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d

159, 178 (3d Cir. 2010) <u>cert. denied</u>, 131 S. Ct. 1798, 179 L. Ed. 2d 655 (U.S. 2011). We are mindful of these pleading requirements, which are considered together with the standards of pleading applicable to all civil actions in federal court as defined in <u>Twombly</u> and <u>Iqbal</u>, <u>supra</u>.

In this case, Victor's allegations of a vast conspiracy involving multiple corrections officers and prison officials are replete with conclusions, and are infused throughout with Victor's own speculation regarding the ostensible motivations of corrections officials who cited him with prison misconduct or took other actions against him in early 2012. Victor has now filed three separate complaints in this action, and yet we find that he has failed to allege sufficient plausible facts to support claims for conspiracy, claims that instead rest almost entirely on Victor's own subjective insistence that the adversity he has faced as an inmate in 2012 is directly related to the litigation he has filed against corrections officers and prison officials. Upon consideration, we find that Victor's allegations are inadequate to support a claim for conspiracy, and we recommend that these claims be denied without further leave to amend.

**E**.   **Victor May Not Sustain a Claim Based Solely Upon Verbal Harassment**

Finally, Victor claims these Defendants used abusive language against him because he had sued a former SCI-Camp Hill corrections officer in other litigation that was tried in this Court in May 2012. This claim of verbal harassment also warrants only brief consideration since: "It is well settled that verbal harassment of a prisoner, although deplorable, does not violate the Eighth Amendment. See McBride v. Deer, 240 F.3d 1287, 1291 n. 3 (10th Cir.2001); DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir.2000); see also Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir.1997) (rejecting the Eighth Amendment claim of a prisoner who alleged that he "was verbally harassed, touched, and pressed against without his consent" because "[n]o single incident that he described was severe enough to be 'objectively, sufficiently serious.' ")." Robinson v. Taylor, 204 F. App'x 155, 156 (3d Cir. 2006). See, e.g., Rister v. Lamas, 4:CV-10-1574, 2011 WL 2471486 (M.D. Pa. June 21, 2011); Patterson v. Bradford, CIV. 10-5043 NLH, 2011 WL 1983357 (D.N.J. May 20, 2011); Williams v. Bradford, CIV. 10-5120 JBS, 2011 WL 1871437 (D.N.J. May 13, 2011); Ringgold v. Lamby, 565 F. Supp. 2d 549, 553 (D. Del. 2008); Sharpe v. Costello, 1:06 CV 1493, 2007 WL 1098964 (M.D. Pa. Apr. 11, 2007). Because in some instances Victor simply alleges that he was verbally harassed, and given that it

is "well settled that verbal harassment of a prisoner, although deplorable, does not violate the Eighth Amendment," Robinson v. Taylor, 204 F. App'x 155, 156 (3d Cir. 2006), these verbal harassment allegations also fail to state a constitutional claim.

## IV.   RECOMMENDATION

Accordingly, for the reasons set forth above, it is recommended that Plaintiff's motion to supplement the amended complaint (Doc. 27.) be GRANTED but that Defendants' motion to dismiss (Doc. 38.) also be GRANTED with prejudice and the case closed.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall

witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 28th day of November 2012.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge